ROSE LAFLAMME *v.* JOSEPH DALLESSIO, EXECUTOR (ESTATE OF DOMINIC DALLESSIO) (SC 16594)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 24—officially released August 6, 2002

*Michael W. Levy,* for the appellant (plaintiff).

*John P. Calabrese,* for the appellee (defendant).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the Appellate Court properly concluded that there was no genuine issue of material fact regarding whether the defendant, who was sued in his representative capacity

as executor of his decedent's estate, was in possession or control of the premises on which the plaintiff alleged that she was injured. The plaintiff, Rose LaFlamme, appeals from the judgment of the Appellate Court affirming the trial court's grant of summary judgment for the defendant, Joseph Dallessio, the executor of the estate of the decedent, Dominic Dallessio.[1] *LaFlamme* v. *Dallessio*, 65 Conn. App. 1, 7, 781 A.2d 482 (2001). On appeal, the plaintiff claims that the Appellate Court improperly concluded that: (1) during the settlement of an estate, the executor never has a duty to keep property of the estate in a reasonably safe condition; and (2) certain Probate Court decrees and affidavits did not establish a genuine issue of material fact as to the defendant's control of the property. We granted certification limited to the following issue: "Did the Appellate Court properly conclude that there was no material question of fact regarding whether the defendant executor owed a duty of care to the plaintiff?" *LaFlamme* v. *Dallessio*, 258 Conn. 924, 925, 783 A.2d 1027 (2001). We reverse the judgment of the Appellate Court.

The plaintiff brought this action against the defendant alleging that he was negligent in failing to exercise reasonable care to keep the estate property in a reasonably safe condition. Specifically, the plaintiff alleged that a dangerous and defective condition existed on the driveway of property owned and controlled by the

---

[1] The plaintiff is the daughter of the decedent's widow, Mary Dallessio. At the time of the decedent's death, the decedent's widow had initiated divorce proceedings against him. Accordingly, the decedent did not make any provision for her in his will. By virtue of certain Probate Court decrees, however, the decedent's widow continued to live on the decedent's property after his death. The plaintiff was allegedly injured on the property owned by the decedent and occupied by the decedent's widow. The record indicates that the plaintiff's interest on appeal is represented by Kimberly LaFlamme, the administratrix of the estate of Rose LaFlamme. For purposes of this appeal, references to the plaintiff are to Rose LaFlamme.

estate, which caused her to fall and sustain personal injuries. Subsequently, the defendant moved for summary judgment, asserting that he was not in possession or control of the property and, therefore, he owed no duty of care to the plaintiff. The trial court, *Hennessey, J.*, granted the defendant's motion and rendered judgment for the defendant. The Appellate Court affirmed the trial court's grant of summary judgment. *LaFlamme* v. *Dallessio*, supra, 65 Conn. App. 7. This appeal followed.

The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994). The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. *Dougherty* v. *Graham*, 161 Conn. 248, 250, 287 A.2d 382 (1971). Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001).

The plaintiff claims that the Appellate Court improperly concluded that there was no genuine issue of material fact regarding who had possession and control of the property upon which the plaintiff alleges that she was injured. The defendant argues that, because certain Probate Court decrees gave possession and control of the property to the decedent's widow for a period of

one year after the death of the decedent, he did not, as a matter of law, have possession or control of the property during the time the plaintiff alleges that she was injured and, therefore, he did not owe a duty of care to her. We agree with the plaintiff.

In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury. *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). "Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997). Although the determination of whether a duty exists is ordinarily a question of law; *Petriello* v. *Kalman*, 215 Conn. 377, 382, 576 A.2d 474 (1990); under some circumstances, the question involves elements of both fact and law. *Raboin* v. *North American Industries, Inc.*, 57 Conn. App. 535, 538, 749 A.2d 89, cert. denied, 254 Conn. 910, 759 A.2d 505 (2000).

In order to assess the duty owed to the plaintiff, it is first necessary to establish the point from which that duty flows. Our law is well settled that the executor of an estate does not take title to real property of the estate. *Ryder* v. *Lyon*, 85 Conn. 245, 252, 82 A. 573 (1912). Upon death of the owner of real property, legal title to real property immediately passes to the decedent's heirs, subject to the right of the executor to administer the estate. *O'Connor* v. *Chiascione*, 130 Conn. 304, 306, 33 A.2d 336 (1943). Liability for injuries caused by defective premises, however, does not depend on who holds legal title, but rather on who has possession and control of the property. *Farlow* v.

*Andrews Corp.*, 154 Conn. 220, 225, 224 A.2d 546 (1966). Thus, the dispositive issue in deciding whether a duty exists is whether the executor of an estate has any right to possession and control of the property.

Therefore, the issue in this appeal is governed by General Statutes § 45a-321 (a),[2] which provides in relevant part: "The fiduciary of a decedent's estate shall, during settlement, have the possession, care and control of the decedent's real property . . . unless such real property has been specifically devised or directions have been given by the decedent's will which are inconsistent with this section; but the court may order surrender of the possession and control of such real property to the heirs or devisees, or may, during settlement, order distribution of such real property."

We must first establish the meaning of § 45a-321 (a). " 'The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Id.;

---

[2] General Statutes § 45a-321 (a) provides: "The fiduciary of a decedent's estate shall, during settlement, have the possession, care and control of the decedent's real property, and all the products and income of such real property during such time shall vest in the fiduciary as personal property, unless such real property has been specifically devised or directions have been given by the decedent's will which are inconsistent with this section; but the court may order surrender of the possession and control of such property to the heirs or devisees, or may, during settlement, order distribution of such real property."

*Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services*, 231 Conn. 355, 362, 650 A.2d 147 (1994); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755–56, 601 A.2d 1005 (1992).' . . . *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431–32, 692 A.2d 742 (1997)." *Bender* v. *Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001).

Pursuant to the plain language of § 45a-321 (a), the executor of an estate will have possession, care and control of the decedent's real property during the settlement of the estate unless one of three conditions exists: (1) the property has been specifically devised in the decedent's will; (2) directions are given in the decedent's will that are inconsistent with the statute; or (3) the court has ordered the executor to surrender possession, care and control of the property in favor of the heirs, or the court has ordered distribution of the property. See General Statutes § 45a-321 (a). None of these conditions exists in the present case.

Our review of the decedent's will reveals that he did not specifically devise the property upon which the plaintiff alleged that she was injured, and he did not leave any directions that were inconsistent with the terms of § 45a-321.[3] The decedent's will also did not

---

[3] The decedent's will consists of six paragraphs. The first paragraph directs the decedent's executor to pay all just debts, taxes and funeral expenses. The second paragraph provides for burial instructions. The third paragraph provides: "All the rest, residue, and remainder of my estate, both real and personal, of whatever kind and nature, wherever situated, of which I shall die seized or possessed, or to which I might in any manner be entitled to at the time of my death, I give, devise and bequeath, in equal shares, to my sister, Mary Deluco, currently residing in the Town of East Hartford, Connecticut, my brother, Joseph Dallessio, currently residing in the Town of Windsor, Connecticut and my brother, Carmen Dallessio, currently residing in the Town of Wethersfield, Connecticut." The fourth paragraph of the decedent's will provides: "In light of the fact that I am currently separated from my wife, Mary V. Dallessio, and there is a case currently pending in the Hartford Superior Court, Docket No. FA 96 0713530S, entitled 'Mary V. Dall[e]ssio vs. Dominic Dall[e]ssio', seeking a dissolution of marriage, I make no provision in this, my Last Will and Testament, for my wife, Mary

include any express provision devising the property at issue. As such, it fell within the residuary clause, which left the "rest, residue, and remainder" of his property to the decedent's siblings in equal shares. See footnote 3 of this opinion. These equal shares given to the beneficiaries listed in the decedent's will were without regard to any particular fund or property and may be satisfied out of the general assets of the decedent's estate.[4] The property involved in this appeal had not, therefore, been specifically devised in the decedent's will.

The defendant points to two Probate Court decrees, issued prior to the plaintiff's alleged injury, which gave the decedent's widow use of the marital home for a period of one year after the death of the decedent.[5] It

V. Dallessio." The fifth and sixth paragraphs, respectively, appoint the defendant as executor of the decedent's estate and authorize him with powers enumerated in General Statutes §§ 45a-234 and 45a-235 of the Fiduciary Powers Act.

[4] "The fundamental distinction between general and specific legacies is that the former may be satisfied out of the general assets of the testator's estate without regard to any particular fund, thing, or things, while the latter are gifts of particular specified things, or of the proceeds of the sale of such things, or of a specific fund or a defined portion thereof. In the case of the former, there is no intent on the part of the testator to make a specific disposition of particular assets of his estate as such; in the latter case, the intent is that the attempted donation shall be satisfied by the delivery of specific property forming a part of the estate, and so described as to be identified as the subject of the gift, and in no other way." (Internal quotation marks omitted.) *Burnham* v. *Hayford*, 141 Conn. 96, 102, 104 A.2d 217 (1954). As the dissent in the Appellate Court correctly notes: "In the present case, the residuary clause merely directed the executor to divide the residue of the decedent's estate into three equal shares and distribute one share to each of three beneficiaries. There is no indication in this clause, or in the remainder of the will, that the testator (the decedent) intended to make a specific disposition of particular assets of his estate." *LaFlamme* v. *Dallessio*, supra, 65 Conn. App. 12 (*Mihalakos, J.*, dissenting).

[5] The first Probate Court decree, dated January 21, 1997, provides: "The [defendant] shall pay the [decedent's widow] out of principal the sum of $200.00 per month retroactive to November 5, 1996, the date of death for a period of twelve months, not to exceed, however, the period of settlement." The decree also provides that: "[The decedent's widow], shall have the use of the family car and marital home for one year from the date of death. The [defendant] shall maintain insurance on the car and shall fill the oil tank

was upon this property that the plaintiff alleged she had been injured. The defendant submits that these decrees support his claim that he owed no duty to the plaintiff because the Probate Court had ordered him to surrender possession, care and control of the property to the decedent's widow. The Appellate Court agreed with the defendant, and concluded that the Probate Court decrees were conclusive evidence that the decedent's widow had been in possession and control of the property at the time the plaintiff was injured. *LaFlamme* v. *Dallessio*, supra, 65 Conn. App. 4–5. We disagree.

As noted previously, § 45a-321 (a) permits the Probate Court to order the executor to surrender possession, care and control of real property of the estate only to the heirs or devisees of the decedent. The decedent's widow, however, was neither an heir nor a devisee under the decedent's will. See footnote 3 of this opinion. Rather, the Probate Court orders giving use of the marital home to the decedent's widow fall within the purview of General Statutes § 45a-321 (b).

Section 45a-321 (b) provides: "The family of the decedent shall be allowed to remain in the dwelling house

for the house using the assets of the estate. During this time, [the decedent's widow] shall grant [the defendant], upon reasonable notice by him, reasonable access to the house for the purposes of cleaning the house and listing the house with a broker for sale."

The second Probate Court decree, dated April 1, 1997, ordered that the first Probate Court decree be modified as follows: "[The decedent's widow] shall by May 1, 1997 mark the personal items in the house at 83 Cambridge Drive to indicate which items she is claiming as her own, which items are the estate but that should remain in the house for her use and which items are the estate's but should be removed from the house. She shall further by May 1, 1997 remove personal items from the house which are not in use but which clutter the house preventing [the defendant] from properly cleaning and showing the house. [The decedent's widow] shall vacate the house at 83 Cambridge Drive, East Hartford from May 1 through May 8, 1997 for the purpose of allowing [the defendant] and his agents to clean and otherwise ready the house for sale."

occupied by him at the time of his death, and may occupy such land and buildings connected therewith as the court considers necessary for their convenience and comfort until the same is sold, distributed or otherwise disposed of according to law." The affidavits filed by the plaintiff and the decedent's widow both demonstrate that, prior to the death of the decedent, the decedent and the decedent's widow had lived at the property upon which the plaintiff alleged that she had been injured. Therefore, although the decedent's widow was not an heir or devisee under the decedent's will, and therefore could not have been granted use of the property pursuant to § 45a-321 (a), we conclude that she was granted use of the marital home for a term of one year after the death of the decedent pursuant to § 45a-321 (b).

Our conclusion that the Probate Court decrees did not conclusively relieve the defendant of his care and control of the property at issue is further supported by basic principles of premises liability. In our view, when considered in the light of premises liability, the relationship that arose between the defendant and the decedent's widow by operation of the Probate Court decrees was analogous to a landlord-tenant relationship. Pursuant to the Probate Court orders, a one year term for the use of the marital home was carved out of the decedent's estate and given to the decedent's widow, operating much like a lease. The defendant, therefore, as fiduciary of the estate, had the right of administration over the property, pursuant to § 45a-321 (a), while the use of the property was given to the decedent's widow, pursuant to § 45a-321 (b). The general rule regarding premises liability in the landlord-tenant context is that "landlords owe a duty of reasonable care as to those parts of the property over which they have retained control . . . ." *Gore* v. *People's Savings Bank*, 235 Conn. 360, 374, 665 A.2d 1341 (1995). "[L]andlords [how-

ever] generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant." (Internal quotation marks omitted.) Id. The issue of whether the landlord retained control over a specific area of the premises is "essentially a matter of intention to be determined in the light of all the significant circumstances." *Dinnan* v. *Jozwiakowski*, 156 Conn. 432, 434, 242 A.2d 747 (1968). Thus, "[u]nless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue." *Panaroni* v. *Johnson*, 158 Conn. 92, 98, 256 A.2d 246 (1969). In other words, if the terms of control are not express between the parties, the question of who retains control over a specific part of the property is an issue of fact and a matter of intent that can be determined only in light of all the relevant circumstances.

Here, there was no lease between the defendant and the decedent's widow. The Probate Court decrees, however, gave the decedent's widow use of the property for a term of one year. Our review of the record reveals that the Probate Court decrees are silent as to who, as between the defendant and the decedent's widow, retained control over the driveway upon which the plaintiff alleged she had fallen. The decree of January 21, 1997, stated only that the decedent's widow is allowed "use of" the marital home, but does not describe her use as exclusive. See footnote 5 of this opinion. Indeed, the Probate Court ordered the defendant to "fill the oil tank for the house using the assets of the estate" and allowed him, upon reasonable notice, access to the house for the purpose of cleaning and listing the house for sale. See footnote 5 of this opinion.

The Probate Court's order, therefore, did not conclusively establish who retained control over the premises.

Additionally, the affidavit of the decedent's widow, submitted in opposition to the defendant's motion for summary judgment, stated that it was her understanding that the defendant was responsible for the exterior maintenance, and that she was "only a tenant and had no legal right to ownership." Therefore, neither the Probate Court decrees nor the affidavits made explicit who retained control over the premises. The question of possession and control over the premises in the present case was, consequently, a question of fact that must be considered in light of all relevant circumstances. Accordingly, it should not have been disposed of by way of summary judgment. See *Spencer* v. *Good Earth Restaurant Corp.*, 164 Conn. 194, 198–99, 319 A.2d 403 (1972). The defendant nevertheless argues that § 45a-321 (a) grants the power, possession and control over the property to the executor of an estate solely for the purpose of protecting the rights of creditors. More specifically, the defendant relies on *Claydon* v. *Finizie*, 7 Conn. App. 522, 526, 508 A.2d 845 (1986), to support his argument that, because there is no allegation that the property involved in the present case is needed to meet the claims of creditors, the defendant had no right to possession or control over the property and, therefore, as a matter of law, he owed no duty to the plaintiff. This court previously has addressed this proposition in *Brill* v. *Ulrey*, 159 Conn. 371, 375–76, 269 A.2d 262 (1970). We conclude that the facts of both *Brill* and *Claydon* are distinguishable from the present case and that the defendant's reliance on them is, therefore, misplaced.

In *Brill*, this court determined that an executor, absent an allegation that the property is required to meet some claim against the estate, lacks a sufficient interest in the property and, therefore, is not permitted

to bring an action seeking to quiet title to the property in derogation of the rights of heirs. Id. Similarly, in *Claydon*, the Appellate Court held that an administrator of an estate does not have standing to seek partition and sale of real property of the estate because the administrator does not have a sufficient interest in the property. *Claydon* v. *Finizie*, supra, 7 Conn. App. 526. The court in *Claydon* determined that, where the property was not needed to meet claims against the estate, there was no occasion to allow the administrator to exercise control over the property in derogation of the rights of the heirs. Id. In both *Claydon* and *Brill*, therefore, in order for the executors to exercise some power that would have been in derogation of the rights of the decedent's heirs, the executors were required to establish that the property was needed to meet some claim against the estate.

In *O'Connor* v. *Chiascione*, supra, 130 Conn. 306, we relied on § 45a-321 (a) in holding that, although an administrator is only a fiduciary for those interested in the estate and does not have title to the real property included therein, an administrator can nonetheless lease such property during settlement of the estate. Our conclusion was based on the fact that, upon the death of the owner of real estate, legal title passes at once to the heirs *subject to* the right of the administrator to have possession, care and control of it during settlement of the estate. Id. As we stated in *O'Connor*, "when the administrator came into possession of the property he was entitled during the settlement of the estate to the benefit of the covenants in it running to the lessor, such as that providing for the payment of rent, and the right of re-entry for default, covenants which, after the settlement of the estate, would inure to the benefit of the heirs." Id., 307. Thus, in *O'Connor*, we interpreted § 45a-321 (a) as giving executors and administrators the power of possession, care and control over the

decedent's real property during the administration of the estate.

*O'Connor* indicates that the executor of an estate can have possession, care and control of the property during the administration of the estate regardless of whether the property is needed to satisfy the claims of creditors. Id., 306. This temporary right of possession, care and control may, under certain circumstances, give rise to a duty of care and is distinguishable from the executor's exercise of power over the estate that may result in an act that is in derogation of the rights of heirs.

*O'Connor*, rather than *Brill*, controls in the present case because the defendant, by maintaining the property in a reasonably safe condition pursuant to his right to possession during the administration of the estate, would not be acting through any power given to him as an executor and would not derogate the rights of any heirs of the estate. This is particularly true considering, as stated previously, that the decedent's widow was not an heir or a devisee under the decedent's will. See footnote 3 of this opinion. Indeed, as fiduciary for the estate,[6] the defendant's maintenance of the driveway in a reasonably safe condition would actually *benefit* the heirs of the estate by preserving the value of the property. Because the maintenance of the driveway in a reasonably safe condition would not be an exercise of any power in derogation of the rights of the decedent's heirs, *Claydon* and *Brill* do not apply in this situation. Rather, as discussed previously, *O'Connor* and § 45a-321 (a) control. Consequently, the question of who had possession and control of the property and, therefore, who owed the duty of care to the plaintiff, remained a

---

[6] As executor, the defendant was a fiduciary for the estate. *Hall* v. *Schoen-wetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996). The fiduciary has the "responsibility to maintain an undivided loyalty to the estate . . . and must diligently represent the rights of the heirs and distributees and also those of creditors." (Citation omitted; internal quotation marks omitted.) Id.

question of fact to be determined by further proceedings. As a result, summary judgment should not have been granted.

We note also that, if accepted, the defendant's argument that he had no duty to keep the estate property in a reasonably safe condition would remove the duty of care from the party who would have the greatest incentive to make repairs, and place it on the person whose only interest in the property was a one year term of use and who likely would not have any incentive to make repairs. The decedent's widow stated in her affidavit: "I had no reason to maintain the exterior of the house as I knew that I would be out of the house soon and [the defendant] had every reason to maintain the exterior of the house because he was trying to get it ready for sale." Additionally, the defendant, as fiduciary of the estate, would have an incentive to keep the estate property in good repair. This is especially true considering the Probate Court's decree ordering the decedent's widow to vacate the property in order to allow the defendant to enter the property and prepare it for sale. See footnote 5 of this opinion. Although we do not determine that the defendant, as a matter of law, had a duty to keep the property in a reasonably safe condition, we do conclude that the Probate Court decrees and the affidavits filed in opposition to the defendant's motion for summary judgment demonstrated a genuine issue of material fact as to who had possession and control of the property during the time that the plaintiff alleges she was injured.

Finally, the defendant argues that the affidavits submitted by the plaintiff in support of her claim that the defendant had possession, care and control of the property were insufficient to create a genuine issue of material fact. More specifically, the defendant argues that the statements contained in the affidavits were merely unsupported assertions of fact and were not proof of

the existence of a genuine issue of material fact. As noted previously, however, when deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 105. Although " '[m]ere assertions of fact are insufficient to establish the existence of a material fact' "; *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995); we conclude that, in the present case, the plaintiff's affidavits, combined with the Probate Court decrees, form an evidentiary foundation that discloses a genuine issue of material fact.

The affidavit of the decedent's widow does not merely assert that a factual dispute exists, but also describes, from personal knowledge, her understanding as to the relationship that existed between herself and the defendant. She stated: "From October of 1996 until the date I moved out of the house in November of 1997, it was my understanding with [the defendant] that he was responsible for all exterior maintenance, including lawn care, snow removal and whatever was necessary on the outside of the house." Additionally, the Probate Court decrees, by giving a term of use to the decedent's widow and allowing the defendant the right, upon reasonable notice, to enter the property to prepare it for sale, were unclear as to who retained control over the property and who had the duty of repair. In our view, the affidavits of both the plaintiff and the decedent's widow, together with the Probate Court decrees, reasonably could lead a fact finder to conclude that the defendant retained the possession, care and control of the driveway upon which the plaintiff alleged that she had fallen. Because a genuine issue of material fact exists, summary judgment was improper.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand

the case to that court for further proceedings according to law.

In this opinion the other justices concurred.